LA REDDOLA, LESTER & ASSOCIATES, LLP
*Attorneys for Plaintiff Union Square Supply, INC*
600 Old Country Road, Suite 230
Garden City, New York 11530
(516) 745-1951

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNION SQUARE SUPPLY INC, Individually and On Behalf of a Class of All Other Persons Similarly Situated, | Case No: |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| -against- | **Jury Demanded** |
| MAYOR BILL DE BLASIO, CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF CONSUMER AND WORKER PROTECTION, LORELAI SALAS, as Commissioner of the New York City Department of Consumer and Worker Protection, OFFICE OF ADMINISTRATIVE TRIALS & HEARINGS, and JONI KLETTER, as Commissioner and Chief Administrative Law Judge of the Office of Administrative Trials and Hearings, INSPECTOR DAVI, and INSPECTOR JOHN DOE(S) AND INSPECTOR JANE DOE(S), to be Identified Later, | |
| Defendants. | |

Plaintiff UNION SQUARE SUPPLY, INC., individually and on behalf of a class of all other persons similarly situated, by its attorneys, La Reddola, Lester & Associates, LLP, as and for its complaint against the Defendants, based upon personal knowledge as to itself and its own acts, and information and belief as to all other matters, respectfully sets forth:

1

## NATURE OF THE ACTION

1.     This is a civil rights class action lawsuit brought by Plaintiff UNION SQUARE SUPPLY, INC. ("UNION SQUARE"), individually and on behalf of a class of all other persons similarly situated (the "Class Members"), seeking a declaratory judgment, injunctive relief and monetary damages pursuant to 42 U.S.C § 1983 for violation of their rights under the Eighth Amendment of the United States Constitution, the Fourteenth Amendment of the United States Constitution, and *Monell* liability against Defendants MAYOR BILL DE BLASIO, CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF CONSUMER AND WORKER PROTECTION, LORELAI SALAS, as Commissioner of the New York City Department of Consumer and Worker Protection, OFFICE OF ADMINISTRATIVE TRIALS & HEARINGS, and JONI KLETTER, as Commissioner and Chief Administrative Law Judge of the Office of Administrative Trials and Hearings, INSPECTOR DAVI, and INSPECTOR JOHN DOE AND INSPECTOR  JANE DOE for the creation and maintenance of an illegal and unconstitutional penalty enforcement scheme, abuse of emergency powers, and other misconduct that improperly assesses penalties and fines on businesses without any notice or due process, in violation of New York State and Federal Law.

2.     Corporations are "persons" for purposes of the due process clause of the Fourteenth Amendment and, therefore, a corporation may bring suit under federal civil rights statute for alleged infringements of its rights to due process. 42 U.S.C.A. § 1983; U.S.C.A. Const. Amend. 14.

3.     Plaintiff and the Class Members are retail businesses who conducted their businesses legally and sold various retail items in good faith, and were fined by the Defendants under the guise of Title 6 of the Rules of  the City of NY (RCNY) § 5-42(b)(1), from March 13, 2021 to date.

4.     MAYOR BILL DE BLASIO, ("De Blasio") THE CITY OF NEW YORK, ("NYC") THE   NEW   YORK   CITY   DEPARTMENT   OF   CONSUMER   AND   WORKER

PROTECTION,("DCWP") LORELAI SALAS, as Commissioner of the New York City Department of Consumer and Worker Protection, ("Salas"), INSPECTOR DAVI, and INSPECTORS JOHN DOE AND JANE DOE, ("Davi" or "INSPECTORS") have imposed outrageous, illegal, excessive and unconstitutional fines under a program where the standards for price gouging are unpublished, evolving, unfixed, and in violation of the clear wording and intent of Title 6 of the Rules of the City of New York Section 5-42(b) ("RCNY § 5-42(b)").

     5.      THE OFFICE OF ADMINISTRATIVE TRIALS & HEARINGS, ("OATH") and JONI KLETTER, as Commissioner and Chief Administrative Law Judge of the Office of Administrative Trials and Hearings, ("Kletter"), have ignored the 14th Amendment and due process rights of the Plaintiff and Class Members.  They have supported the unconstitutional program by validating, supporting, rendering decisions, and imposing fines against the Plaintiff and the Class Members under a bogus hearing process whereby defaults regularly are granted, adjournments are nearly impossible, and "appeals" result in outrageous decisions.  One such decision is *DCWP v. Qidu Discount Appeal No. 0546210 (Nov. 17, 2020) "no defense where merchant increased profits by adding its typical percentile mark-up to the wholesalers cost")* is in disregard of the law and other OATH Decisions, where no hearings are permitted unless an outrageously difficult online process is navigated, where Inspector appearances are waived, and hearsay regularly permitted.   Decisions are based upon voluminous "packets" where computer printouts of online products are taken as evidence, even if all of the products shown are clearly shown to be "unavailable" or "out of stock", and where out of state or national vendors offering delivery by Amazon are considered to compare to Respondents with actual brick and mortar stores in NYC and who are subject to NYC taxes and laws.

     6.      For a period of time Defendants had a policy to limit fines to a maximum of $3,000.

La Reddola, Lester & Associates, LLP | 600 Old Country Road, Suite 230 | Garden City, NY 11530 | (516) 745-1951

7.      More recently, the $3,000 maximum fine limit is no longer being honored.  Fines for violations in excess of $15,000.00 or more frequently occur.

8.      The  price gouging statute is being applied in an arbitrary manner.  It is constantly evolving by decisions in cases which change the determination of price gouging and defenses.

9.      The Defendants now consider each item in a box of personal protection equipment covered by the price gouging statute to be eligible for a separate violation, (*i.e.,* a box of twenty masks is counted as twenty violations) and charge $350 per violation, violations can be outrageously high compared to the alleged "price gouging."

10.      Defendants have abused 6 RCNY § 5-42(b)(1) to set fixed prices for goods sold by the Plaintiff and the Class Members.

11.      Defendants have abused 6 RCNY § 5-42(b)(1) to allow for a definition of price gouging to evolve by case law instead of published standards set up by a regulated board as occurs in tenant rent control.

12.      While 6 RCNY § 5-42(b)(1) purports to prevent and/or deter price gouging during an emergency declaration, the Defendants have not and continue not to publish maximum prices.

13.      Defendants outrageously high fines and penalties serve no public benefit to New Yorkers, when well-intentioned store owners are not given notice of the maximum price limits.

14.      The conduct, actions, and policy of Defendants is intentional in its violation of the Federal and State Constitution, the due process rights, and right to be free of excessive fines, of the Plaintiff and Class Members.

## JURISDICTION AND VENUE

15.      This Court has jurisdiction of this action under 28 U.S.C. §1331 in that this action arises under the Constitution and laws of the United States and under 28 U.S.C. §1343 in that this action

4

seeks to redress the deprivation, under color of the laws, statutes, ordinances, regulations, customs and usages of the State of New York, of rights, privileges or immunities guaranteed to Plaintiff and the Class Members under the Eighth Amendment and the Fourteenth Amendment of the United States Constitution.  This Court has supplemental jurisdiction over Plaintiff's state law claim under 28 U.S.C. § 1367(a).

16.　　This action seeks relief pursuant to the Eighth Amendment, Fourteenth Amendment and 42 U.S.C §§ 1983 & 1988.

17.　　Venue in the Southern District is proper under 28 U.S.C. §1391(b), since all of the events and omissions giving rise to the Plaintiff and the Class Members' claims arose in New York County within the Southern District of New York. Additionally, upon information and belief, all parties currently reside or maintain offices in Manhattan or the City of New York.

## PARTIES

18.　　Plaintiff Union Square Supply Co. is incorporated in the State of New York and has its principal place of business at 130 Fourth Avenue, New York, New York 10003.

19.　　Defendant De Blasio is the duly elected Mayor of the City of New York.

20.　　Defendant NYC is a duly constituted municipal corporation of the State of New York existing and operating under and by the virtue of the laws of the State of New York.

21.　　Under information and belief, Defendant DCWP is an administrative agency of the NYC with Offices at 42 Broadway, New York, New York 10004.

22.　　Under information and belief, Defendant OATH is an independent executive agency of NYC with offices at 66 John St, New York, New York 10038.

23.　　Under information and belief, Defendant Lorelai Salas is the current commissioner of DCWP.

5

24.     Upon information and belief, Defendant Joni Kletter is the current chief administrative law judge and commissioner of OATH.

25.     Upon information and belief, Inspector Davi is an agency inspector who issued summons based upon a price list provided to him by DCWP.

26.     Upon information and belief, John Doe(s) and Jane Doe(s) are unknown inspectors at DCWP who have been issuing Summons using an unknown maximum permitted price.

## FACTUAL BACKGROUND

### The Adoption of Emergency Rule

27.     In March 12, 2020, De Blasio and NYC declared a local state of emergency in the City of New York, under Emergency Executive Order No. 98.

28.     On March 15, 2020, De Blasio and NYC approved the adoption of the emergency rule, set to expire on July 12, 2020.

29.     On March 15, 2020, Lorelai Salas and the DCWP promulgated the notice of adoption of the emergency rule.

30.     The notice of the emergency rule declared that the "practice of price gouging with regard to personal and household goods and services…" is unconscionable.

31.     The notice also defined price gouging as "when a merchant takes advantage of an abnormal disruption in the marketplace and charges excessive prices, taking advantage of the consumer's inability to bargain or seek a better price, resulting in a gross disparity between the value received by a consumer and the price paid."

32.     6 RCNY 5-42(b)(1) provides:  "It is an unconscionable trade practice for a merchant to sell or offer for sale covered goods or services at an excessive price during a declared state of emergency in the City of New York."

La Reddola, Lester & Associates, LLP | 600 Old Country Road, Suite 230 | Garden City, NY 11530 | (516) 745-1951

33.     6 RCNY 5-42(a) defines "excessive price" as "**10 percent** or more above the price at which the same of similar good or service could have been obtained by a buyer in the City of New York 30-60 days prior to the declaration of a state of emergency."

34.     6 RCNY 5-42(b)(1)(2) has an exception to this rule: "A merchant is permitted to sell or offer for sale covered goods or services at an excessive price if such merchant has increased its price … to an excessive price as a direct result of costs imposed on such merchant by the supplier of such goods … provided that the increase charged to the buyer is comparable to the increase incurred by the merchant."

35.     Another exception to the rule is permitted when the merchant "sold or offered covered goods or services to buyers in the City of New York at an excessive price 30 days prior to the declaration of a state of emergency and such merchant has not increased the price of such goods …."

36.     On June 24, 2020, the temporary emergency rule was extended to a permanent rule.

**Union Square's Charge under Title 6 of the Rules of the City of New York Section 5-42(b)(1)**

37.     On July 13, 2020, Union Square received a summons from the Department of Consumer Affairs regarding price gouging at their store located at 130 Fourth Avenue, New York, New York 10003. (See Exhibit 1 annexed hereto).

38.     Inspector M. Davi took photographs of items that were in the storefront, regardless whether they were offered for sale to the customers.

39.     In other instances, Inspector M. Davi took photographs of items that were for sale, but incorrectly listed the items sale price in the summons.

La Reddola, Lester & Associates, LLP | 600 Old Country Road, Suite 230 | Garden City, NY 11530 | (516) 745-1951

40.     Inspector M. Davi made a determination to charge violations for some items and not others based upon some unknown price list provided by DCWP, which he possessed at the time of his inspection.

41.     At no time did Inspector M. Davi inquire to UNION SQUARE into the sale price of the same items before the enactment of the emergency rule to ascertain whether the then listed price constituted price gouging.

42.     The summons listed eighty-eight counts of violations of Title 6 of the Rules of the City of New York Section 5-42(b)(1) based upon the unknown price list from DCWP. (See Exhibit 1).

43.     The summons listed only the sales price of the items on July 13, 2020.

44.     The summons failed to list the pre-pandemic sale price, or the cost for Union Square Supply, Inc. to purchase the items.

45.     A hearing was scheduled for 8:30 A.M., September 8, 2020 at the OATH offices located at 66 John Street, 11th Floor, New York NY.

46.     Unbeknownst to the Plaintiff, in-person hearings were not being held at that time at 66 John Street, 11th Floor, New York, New York due to the COVID-19 pandemic.

47.     The summons failed to inform Plaintiff that it was required to check the OATH website to see if live hearings were being conducted. (See Exhibit 1).

48.     The summons also failed to provide notice to that Plaintiff that it was required to request a live hearing by telephone five days prior to the hearing date.

49.     Plaintiff was held in default by OATH for failing to appear at 66 John Street, 11th Floor, New York, NY on November 5, 2020. (See Exhibit 2, Notice of Default).

LA REDDOLA, LESTER & ASSOCIATES, LLP | 600 OLD COUNTRY ROAD, SUITE 230 | GARDEN CITY, NY 11530 | (516) 745-1951

50.    Plaintiff retained this firm on or around October 2020, and through this firm, was able to vacate the default and reschedule the hearing.

51.    On January 12, 2021, Plaintiff remotely attended the rescheduled hearing with its attorney.

52.    Mr. Matthew Mansfield appeared on behalf of the DCWP, accompanied by a DCWP inspector, B. Terejanu.

53.    Inspector M. Davi was not present at the remote hearing.  He was no longer with the DCWP.

54.    Plaintiff submitted evidence that, ***in every case***, the sale covered good price of the covered good had increased as a direct result of the cost passed onto Plaintiff by its suppliers.

55.    The DCWP submitted screenshots of out-of-stock online inventory as exhibits to make a determination of price gouging. (See Exhibit 3 attached hereto).

56.    Plaintiff never was provided with DCWP's evidence or the price list used by Inspector Davi to select some items for sale as being in violation of 6 RCNY § 5-42(b)(1), while ignoring others.

57.    Unbeknownst to Plaintiff until the hearing, the DCWP maintained, and continues to maintain, a secret list of the maximum allowable price per item, **regardless of the cost to the retailer to purchase the item**.

58.    To date, Plaintiff has never been provided with the list of maximum allowable prices, although it has been requested at each and every hearing.

59.    The hearing was adjourned until February 17, 2021, to enable Plaintiff to review the "packets" of information which the DCWP would rely upon as evidence of price gouging by showing the price of comparable goods available.

9

60.     As stated above, in almost every instance in each "packet", the items were not in fact available for either in person purchase in a store located in NYC or for purchase online in the City of New York.

61.     The rescheduled hearing was held remotely on February 17, 2021 by telephone.

62.     On February 25, 2021, Hearing Officer Amber Gonzalez of OATH issued a price gouging decision assessing a $21,000 penalty against Union Square for price gouging during a declared state of emergency under Title 6 of the Rules of the City of New York Section 5-42(b)(1). (See Exhibit 4, Decision dated February 25, 2021).

63.     NYC and DCWP alleged violations of this statute on eleven (11) different items with a total of 88 counts.

64.     According to the DCWP, "pursuant to an emergency declaration in March due to the pandemic, prices on items that are necessary to treat, prevent, or diagnose coronavirus cannot be higher than 10% of the same or similar item's price available to NYC consumers prior to the pandemic." (OATH Decision p. 2).

65.     The items at issue in the present case include a Care Cover face mask, Guard face masks, hand sanitizer gel, Soueeum hand sanitizer gel, Meyer's hand sanitizer spray, Everwipe Disinfectant Wipes, Lysol Antibacterial All Purpose Cleaner, Clorox Bleach, Bounty roll of paper towels, SkinTX vinyl gloves, and Venom Steel nitrile gloves.

66.     When considered among the variety of products Union Square offered for sale at the time, the pricing overall did not indicate any use of unfair leverage, an abuse of bargaining power or unconscionable means; nor did the pricing represent a gross disparity between the price of the goods and their value measured by the price at which they were sold immediately prior to March 7, 2020.

67.     Union Square presented evidence at the OATH hearing which support its defenses.

LA REDDOLA, LESTER & ASSOCIATES, LLP | 600 OLD COUNTRY ROAD, SUITE 230 | GARDEN CITY, NY 11530 | (516) 745-1951

68.     At the hearing, the inspector testified that he was provided with a list of "maximum potential prices" by DCWP, and that he had such a list when he made his inspection on July 13, 2020.

69.     Critically, DCWP has not only failed, but has continued to refuse to produce this secret standard list of maximum potential prices, or as an alternative, state what the maximum prices for these emergency goods are permitted.

70.     Despite the evidence presented, OATH assessed $21,000.00 in penalties.

71.     Defendants act under the guise of consumer protection, or a due process hearings, but in reality, they are merely looking to line their pockets at the expense of local businesses.

72.     Defendants are subjecting lawful businesses to a "secret standard" of maximum prices.

73.     Additionally, Union Square faced their own increased costs in acquiring these products in order to sell them to consumers. This evidence was ignored.

74.     6 RCNY § 5-42(b)(2)(i) provides an exception to the price gouging rule.  Where the merchant "has increased its price of such goods or services to an excessive price as a direct result of costs imposed on such merchant by the supplier of such goods or services …", there is no price gouging.

75.     The "new" definition of the exception that has been argued at similar hearings by NYC and DCPW is that if the excessive price is a direct result of costs imposed by a supplier, then the amount of profit cannot increase monetarily. By way of example, if a bottle of hand sanitizer was purchased by Plaintiff for $1.00 and sold for $1.20 before the emergency declaration (a 20 cents markup), and after the emergency declaration the same bottle could only be purchased for $5.00, then it can only be sold by Plaintiff for $5.20, the same 20 cents markup.

11

76.     This definition is not found anywhere in 6 RCNY § 5-42 and cannot be upheld.  This interpretation of the rule is unconstitutionally vague and fails to put Plaintiff and the Class Members on notice of what activity is permitted under 6 RCNY § 5-42.

77.     NYC is well aware of the caselaw required to set prices.  The Rent Stabilization Laws §26-510(a) factors things such as economic conditions, overhead costs, supply, data on cost of products and any other available information.

78.     While legislative enactments enjoy a strong presumption of validity (see, e.g., *State of New York v. Rutkowski*, 44 N.Y.2d 989, 408 N.Y.S.2d 335 (1978)), bureaucratic changes to a rule enacted by the Legislature do not enjoy such a presumption. Regardless, the non-legislative change to the Rule, *i.e.*, requiring the absolute dollar amount of the profit, rather than price, to remain fixed regardless of supplier increases, fails to reasonably apprise the Plaintiff, and other parties similarly situated, of what conduct is actually being penalized. *See id*. The new definition of the exception is unconstitutionally vague.

79.     The failure to apprise Plaintiff and the Class Members of the change in definition from a percentage increase a fixed dollar profit, is further exacerbated by the method in which the Rule is prosecuted. Because the Rule defines price gouging as an increase in price of 10 percent or more over that which "could have been obtained by a buyer in the City of New York," brick-and-mortar shops, with overhead, rent, and other costs, now have to compete with online vendors, who are not subject to any such overhead expenses, regardless of whether the online retailer actually had inventory in stock.

80.     Secret and unconstitutional administrative law appeals cannot be the basis of prosecuting a violation.

LA REDDOLA, LESTER & ASSOCIATES, LLP | 600 OLD COUNTRY ROAD, SUITE 230 | GARDEN CITY, NY 11530 | (516) 745-1951

81.     Moreover, an Article 78 review is not an adequate remedy to correct a faulty hearing process with obvious defective and unconstitutional appeals decisions.

82.     Defendants have compiled a sale price of covered goods from these online vendors and large nationwide chain stores, the majority, if not all, of which are out of stock, and has created a guideline of what prices are acceptable (See Exhibit 4). These guidelines are not published or provided to Union Square or any of the other parties similarly situated, prior to the summons being issued. Rather these guidelines are revealed on the day of an OATH hearing in a legal ambush.

83.     Not only has the bureaucratic change in the Rule resulted in vague, hidden administrative appeals impossible for small stores to comply with, but also the "new" Rule fails to comply with the *Hope* standard applied by the U.S. Supreme Court. The "new" Rule is no longer targeted at price gouging, but has the effect of being a price control regulation, where the vendor cannot sell goods for more profit than what was sold before, essentially fixing the price.

84.     These violations, issued without any evidence of costs, expenses or profit, are completely devoid of the circumstances in which a worldwide pandemic created massive panic and hysteria, driving the cost of these goods upwards overnight. Where many shops closed during this time, Union Square still operated and made these important goods available to its customers for purchase.

85.     An unintended consequence of the City's refusal to provide notice to businesses will be that suppliers of emergency goods will choose instead to sit out an emergency for fear of facing a price gouging investigation,  OATH summons, and sham administrative review. This is precisely what consumers do not need during a state of emergency, namely less storefronts selling these necessary goods.

13

86.     In *Nebbia v. New York*, the Supreme Court upheld the authority of the states to regulate prices as part of the states' general powers to promote the public welfare. *See* 291 U.S. 502 (1934). Since *Nebbia*, price regulation has become an accepted, though sometimes controversial, part of the government's control over the economic marketplace.

87.     Under the void for vagueness doctrine however, a statute violates the Due Process Clause if it "fails to give persons of ordinary intelligence fair notice that their contemplated conduct is proscribed." See *United States v. Bastian*, 112 F. Supp. 2d 378, 380 (S.D.N.Y. 2000) (quoting *Marty's Adult World v. Town of Enfield,* 20 F.3d 512, 516 (2d Cir.1994)). A vagueness challenge to a statute may be facial—a claim that the law is invalid *in toto,* incapable of any valid application—or as-applied. *See Steffel v. Thompson,* 415 U.S. 452, 474, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974).

88.     The validity of New York City's enforcement of these price gouging statutes must be Constitutionally tested in order to ensure businesses are receiving the proper protection the Fourteenth Amendment requires.

**Penalties Imposed on Other Class Members:**

AAA Fulton Supply Co.

89.     AAA Fulton Supply Co. is a representative Class Member.

90.     On March 18, 2020, AAA Fulton Supply Co. ("Fulton") received a summons from the Department of Consumer Affairs (now the Department of Consumer and Worker Protection) after an inspection was conducted on their store at 74 Fulton Street in Manhattan. Fulton's Summons is attached hereto as Exhibit 5.

91.     The summons set a hearing date for August 4, 2020. Although the OATH Courts were physically closed, they were still conducting hearings by phone. Because Fulton was unaware

La Reddola, Lester & Associates, LLP | 600 Old Country Road, Suite 230 | Garden City, NY 11530 | (516) 745-1951

that these hearings were still occurring, they did not "appear" for the hearing and the City assessed a $9,750.00 default decision against them.

92.     Subsequent to this default, Fulton's Counsel requested OATH to arrange for a new hearing. This request was granted by letter on November 5, 2020.

93.     OATH set the new hearing for December 22, 2020. At this remote hearing the City requested an adjournment to review receipts and other documentation that Plaintiff had presented. The matter was then adjourned to February 2, 2021.

94.     On February 1, 2021, Fulton requested an adjournment of the hearing, due to the snowstorm that was predicted to, and did, occur on February 2, 2021.

95.     February 2, 2021 was declared a "Snow Emergency Day."

96.     AAA Fulton Supply Co. was open, selling sale, shovels and necessary food and personal protective equipment, and a hearing was out of the question during this public emergency.

97.     The adjournment request was denied on the basis that the "hearing has been previously adjourned and is not eligible to be rescheduled."

98.     Fulton later requested that the default be vacated, which was permitted on February 16, 2021, after a great deal of effort.

99.     The hearing was rescheduled for March 30, 2021.

100.     Fulton's counsel made a request for the secret price list.  To date the City has not provided it.

Saifee Hardware Inc.

101.     Saifee Hardware Inc. is a representative class member.

102.     On March 15, 2020, Saifee Hardware Inc. ("Saifee") received Summons 05453252, for violating 6 RCNY 5-42(b).

La Reddola, Lester & Associates, LLP | 600 Old Country Road, Suite 230 | Garden City, NY 11530 | (516) 745-1951

103.    On May 21, 2020, Saifee received a second summons, Summons 05455927.

104.    After being defaulted due to the lack of notice of the remote hearing process attached to the summonses, Saifee appeared remotely to oppose Summons 05453252, on September 18, 2020.

105.    The OATH officer ignored all evidence that price increases were the direct result of higher costs being passed onto Saifee by its suppliers.

106.    On September 21, 2020, the decision was issued in Saifee's case. The decision is attached hereto as Exhibit 6.

107.    The OATH officer sustained the fines against Saifee in the amount of $1,750.00. (See Exhibit 6).

108.    Saifee was required to pay the fine so that it could appeal the decision. (See Exhibit 6).

109.    Saifee paid the fine in full and appealed.

110.    On October 6, 2020, Saifee adjourned the remote hearing date for Summons 05455927, so that it could retain legal counsel.

111.    On December 15, 2020, Saifee opposed Summons 05455927 at the remote hearing.

112.    On December 28, 2020, the OATH officer issued another decision against Saifee. The second decision is attached hereto as Exhibit 7.

113.    The violations were again sustained, this time in the amount of $18,550.00.

114.    Saifee was required to pay the fine so that it could appeal the decision.

115.    Saifee paid the fine in full and appealed.

116.    On January 27, 2021, OATH denied the appeal of Summons 05453252, the first summons, by Saifee.

117.    Saifee is currently awaiting an appeal decision on Summons 05455927.

16

118.     Given the OATH process and poor administration controls, the appeal of Summons 05455927 is futile.

Other New York City Class Members

119.     Upon information and belief, other Class Members have faced ever increasing fines and citations through the OATH hearing process for price gouging from the Department of Consumer Affairs.

120.     Currently available on the DCWP website is a list of "price gouging" violations issued in the month of March 2020.

121.     There were approximately 5,200 summonses issued in the month of March 2020 alone, for violation of 6 RCNY 5-42(b)(1).

122.     Plaintiff's counsel made a FOIL request on March 5, 2021, for:

(1) "All **Documents** regarding the enforcement, prosecution, collection and Office of Trials and Hearings (OATH) litigation for violations issued for 'price gouging' under RCNY § 5-42 between March 1, 2020 to February 3, 2021."; (2) For "All **Documents, Rules, Policies, and Correspondence** about the policy regarding the maximum fine of $3,000.00 in aggregate per summons."; (3) For "All **Documents, Rules, Policies and Correspondence** regarding why the policy to have a $3,000.00 maximum aggregate penalty was discontinued."; (4) For "All **Documents, Rules, Policies and Correspondence** showing the date that the policy regarding a $3,000.00 maximum aggregate penalty was discontinued."; (5) For "All Documents, Rules, Policies and Correspondence showing the policy dates that the NYC Department of Consumer Affairs summons form directed Respondents to personally appear at 66 John Street, New York, NY 10038, for an in person hearing while the building was closed to the public for in person hearings."; and (6) For "All Documents, Rules, Policies and Correspondence of Summonses

La Reddola, Lester & Associates, LLP | 600 Old Country Road, Suite 230 | Garden City, NY 11530 | (516) 745-1951

that were placed into default for failing to appear for a live, in-person hearing at 66 John Street, New York, NY 10038 while the building was closed to the public. Provide all Summonses, Defaults, and fines assessed."

123.    The FOIL request is attached hereto as Exhibit 8.

124.    In an email dated February 10, 2021, DCA responded to Plaintiff's counsels' FOIL Request stating, "You can expect a response on or about Wednesday, August 10, 2022," or "significantly longer" after that.  DCWP said it would take approximately 18 months after the FOIL request was submitted to receive a response.

125.    This is an unlawful amount of time to respond to a FOIL request under N.Y. Public Officers Law.  Businesses are being brought into the OATH daily, unable to defend themselves properly without this information, which should be completely public.

126.    In that response, under "Additional Information," DCWP blames "the volume and complexity of records" and states that, "due to the disruption in service necessitated by combating the coronavirus, FOIL response times will be significantly longer."

127.    August 10, 2022 is apparently aspirational for DCWP, as they also stated that these records may not be released until "significantly longer", however DCWP may so choose to define "significantly longer".

128.    Upon information and belief, the summonses, the hearings, the fines are all done electronically such that COVID is not a legitimate excuse for a delay.

129.    The OATH Hearings are also online, yet few adjournments are offered to those who receive summonses under 6 RCNY § 5-42(b)(1).

130.    Since OATH gives scant consideration to requests for adjournments, OATH should not be allowed to have 18 months to answer a FOIL request.

La Reddola, Lester & Associates, LLP | 600 Old Country Road, Suite 230 | Garden City, NY 11530 | (516) 745-1951

131.     In an effort to expedite the DCWP's response to a more acceptable response time Plaintiff's counsel submitted an Appeal of DCWP's Response to FOIL Request on March 3, 2021 and  referenced POL §89(3)(a) which states that a "reasonable" response date should be adhered to, not a date 18 months from the request.

132.     In the event a review of the responsive FOIL documents reveals a claim against DCWP exists, counsel would be outside of the time limitations to commence an action or appeal.

133.     Moreover, the policy of OATH requires full payment of any violation before an appeal can be considered.

134.     On March 17, 2021 Plaintiff's counsels' received  a decision on its Administrative Appeal from DCWP denying our appeal and stating that the FOIL Request is "just one of the over 700 FOIL requests received by the Department annually. Any staff assigned to your request on an ad hoc basis will only be able to dedicate a limited amount of time."

135.     POL §89(3)(a) states:

> An agency shall not deny a request on the basis that the request is voluminous or that locating or reviewing the requested records or providing the requested copies is burdensome because the agency lacks sufficient staffing.

136.     While the FOIL request was not denied, receiving documents responsive to a FOIL request 18 months or more after the request was received essentially puts Petitioner in the same legal position as if a FOIL request were denied.  The requested Documents will not be received within a time frame to seek legal remedy.

137.     On March 17, 2021, an Article 78 Notice of Petition and Petition were filed in New York County Supreme Court by Plaintiff's counsl, related to the above FOIL request and lack of compliance, under Index No. 152698/2021.

138.     Upon information and belief, these are all potential Class Members.

19

## CLASS ALLEGATIONS

139.    Plaintiff brings this action as a Class Action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2) or 23(b)(3) individually and as a class action on behalf of all persons who have been issued fines through OATH for price gouging during a state of emergency (the "Class Members").

140.    Upon information and belief, the number of Class Members is so numerous that joinder is impracticable.

141.    Plaintiff believes there are potentially tens of thousands of individuals and businesses whose claims are similar to Plaintiff's claims, and, furthermore, that Plaintiff's claims are typical of the claims of absent Class Members.

142.    Class Members have sustained damages arising out of Defendants violation of the Fourteenth Amendment to the United States Constitution in the same manner that Plaintiff has sustained damages arising out of Defendants violation of the Fourteenth Amendment of the United States Constitution.

143.    The Class Members share the common question of laws with the Plaintiff regarding the Defendants' lack of due process.

144.    The claims of Plaintiff as a class representative are typical of the Class Members claims. Plaintiff's counsel will fairly and adequately protect the interests of absent Class Members. Plaintiff has retained competent litigation counsel and has no interests that are antagonistic to, or in conflict with, the Class Members.  Plaintiff's interests are, for purposes of this litigation, coincident with the interests of the Class Members.

La Reddola, Lester & Associates, LLP | 600 Old Country Road, Suite 230 | Garden City, NY 11530 | (516) 745-1951

**Grounds for Class Certification**

145.    Certification of the class is appropriate under Federal Rule of Civil Procedure 23(b)(2) or 23(b)(3).

146.    Certification is appropriate under Federal Rule of Civil Procedure 23(b)(2).    The Defendants have acted to maintain an unconstitutional policy and they refuse to modify the policy. This action and refusal to act applies generally to the Class Members, such that final injunctive or declaratory relief is appropriate respecting the class as a whole.

147.    Certification is appropriate under Federal Rule of Civil Procedure 23(b)(3).    The questions of law and fact common to the class members predominate over any questions affecting only the individual members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

148.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because the number of Class Members is so numerous that joinder of all Class Members is impracticable, and the expense and burden of the individual litigation makes it impracticable for the Class Members to adequately address the wrongs complained of herein.  Plaintiff knows of no impediments to the effective management of this action as a class action.

149.    Common questions of law and fact predominate over questions that affect only individual Class Members. Among the questions of law and fact common to the Class Members are:

a.    Whether the Defendants willfully and knowingly violated the Class Members' Fourteenth Amendment Rights under the United States Constitution;

b.    Whether the Defendants willfully and knowingly violated the Class Members' Eighth Amendment Rights under the United States Constitution; and

La Reddola, Lester & Associates, LLP | 600 Old Country Road, Suite 230 | Garden City, NY 11530 | (516) 745-1951

c.  Whether the Class Members are entitled to injunctive, declaratory and/or monetary

relief.

**[INTENTIONALLY LEFT BLANK]**

LA REDDOLA, LESTER & ASSOCIATES, LLP | 600 OLD COUNTRY ROAD, SUITE 230 | GARDEN CITY, NY 11530 | (516) 745-1951

**FIRST CLAIM**
**42 U.S.C § 1983 – Violation of Plaintiff's 14th Amendment Due Process Rights**
**(As Against All Defendants)**

150.    Plaintiff repeats and realleges the allegations set forth in paragraphs above as if fully set forth herein.

151.    An individual is afforded Due Process protection under the Fifth Amendment of the United States Constitution, which is incorporated and applied to the states through the 14th Amendment.

152.    OATH decisions and DCWP citations do not set forth with any particularity what standard inspectors use when they enter a store to investigate price gouging.

153.    The Defendants apply to citizens, such as Plaintiff, arbitrary and capricious standards, forcing Plaintiff and the Class Members to set fixed prices unrelated to Plaintiff's underlying cost of the product..

154.    This is not only a detriment to businesses, but also works a hardship onto New York City consumers who, as a result of these arbitrary and unknown standards, shop at stores that have no substantive guide to aid in price setting.

155.    The City does not comply with the procedural due process notice requirement because it does not provide businesses with a standard to guide and inform them about price setting during a public emergency.

156.    By reason of the foregoing, Plaintiff seeks legal fees, including damages pursuant to 42 U.S.C §1988(b), or in an amount this Court deems proper and appropriate.

**SECOND CLAIM**
**2 U.S.C § 1983 – Violation of Plaintiff's Eighth Amendment**
**Right to be Free from Excessive Fines**
**(As Against All Defendants)**

LA REDDOLA, LESTER & ASSOCIATES, LLP | 600 OLD COUNTRY ROAD, SUITE 230 | GARDEN CITY, NY 11530 | (516) 745-1951

157.     Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

158.     The imposition of a $350 unit maximum fine per unit for the sale of the good above the maximum fixed price for the item is an excessive fine.

159.     The fine is grossly disproportional to the gravity of the violation.

160.     There is no maximum penalty amount that the Plaintiff and Class Members can be fined.

161.     This fine is designed to deprive Plaintiff and Class Members of their livelihood and their future ability to earn a living.

162.     The fine is not related at all to the amount charged per covered good by Plaintiff and the Class Members.

163.     The fine is a bureaucratic creation, rather than being directly enacted by the legislature.

164.     The imposition of the fines are a violation of Plaintiff and the Class Members' right to be free from excessive fines.

165.     By reason of the foregoing, Plaintiff seeks legal fees and damages pursuant to 42 U.S.C §1988(b), or in an amount this Court deems proper and appropriate.

### THIRD CLAIM
### 42 U.S.C 1983 – *Monell* Claim
### (As Against All Defendants)

166.     Plaintiff repeats and realleges the allegations set forth in paragraphs above as if fully set forth herein.

167.     The Defendants have created, implemented, continued, maintained and enforced the Policy, a policy or custom where owners of shotguns and rifles will not have their lawfully owned property returned without first being granted a court order.

LA REDDOLA, LESTER & ASSOCIATES, LLP | 600 OLD COUNTRY ROAD, SUITE 230 | GARDEN CITY, NY 11530 | (516) 745-1951

168.    This Policy is implemented by the Defendants through its administrative agencies such as the DCWP and OATH.

169.    The implementation and continued existence of this policy has caused emotional injuries to Plaintiff and the Class Members.

170.    The implementation and continued existence of this policy has deprived Plaintiff and the Class Members of their constitutional rights.

171.    The implementation and continued existence of this policy has caused Plaintiff to seek counsel to navigate the OATH process.

172.    Based on the foregoing, Plaintiff and the Class Members are entitled to declaratory and injunctive relief as well as monetary damages as set forth below.

173.    By reason of the foregoing, Plaintiff seeks legal fees and damages pursuant to 42 U.S.C §1988(b), or in an amount this Court deems proper and appropriate.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury of all issues.

La Reddola, Lester & Associates, LLP | 600 Old Country Road, Suite 230 | Garden City, NY 11530 | (516) 745-1951

## **PRAYERS FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests judgment as follows:

i.  First Cause of Action: Awarding Plaintiff and the Class Members damages in excess of $50,000,000.00, plus legal fees and damages pursuant to 42 U.S.C §1988(b), or in amount this Court deems proper and appropriate.

i:  Second Cause of Action Awarding Plaintiff and the Class Members damages in excess of $50,000,000.00, plus legal fees and damages pursuant to 42 U.S.C §1988(b), or in an amount this Court deems proper and appropriate;

ii:  Third Cause of Action: Awarding Plaintiff and the Class Members damages in excess of $50,000,000.00, plus legal fees and damages pursuant to 42 U.S.C §1988(b), or in an amount this Court deems proper and appropriate;

iii:  Enter a declaratory judgment that Defendants willfully violated the rights of the Plaintiff and Class Members that are secured by the United States and New York State Constitutions, as alleged herein;

iv:  Issue temporary,  preliminary and permanent injunctions

  a.  To stay UNION SQUARE INC'S payment of the excessive fine and administrative e appeal;

  b.  To stay any further Fifth, Eighth, and Fourteenth Constitutional violations by new inspections, fines, or summons as against UNION SQUARE SUPPLY INC., AA FULTON SQUARE SUPPLY CORP., and SAIFEE HARDWARE INC.

  c.  Should the Court determine, a stay of the Defendants' continuous Constitutional violations of the Fifth, Eighth, and Fourteenth Amendments by enjoining all

26

enforcement, hearings, and determinations of price gouging entirely as for all Class Members and Potential Class Members;

v:    Granting such other legal and equitable relief as this Court deems just and proper.

Dated: Garden City, NY               LA REDDOLA, LESTER & ASSOCIATES, LLP
March 18, 2021

*/s/ Robert J. La Reddola*

By: Robert J. La Reddola (RJL 6501)
*Attorneys for Plaintiff*
600 Old Country Road, Suite 230
Garden City, New York 11530
(516) 745-1951

27