```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
UNION SQUARE SUPPLY INC., individually :
and on behalf of a class of all other  :
persons similarly situated,            :        21cv2390 (DLC)
                                       :
                         Plaintiff,    :        OPINION AND ORDER
                                       :
             -v-                       :
                                       :
MAYOR BILL DE BLASIO, CITY OF NEW      :
YORK, NEW YORK CITY DEPARTMENT OF      :
CONSUMER AND WORKER PROTECTION,        :
LORELAI SALAS, as Commissioner of the  :
New York City Department of Consumer   :
and Worker Protection, OFFICE OF       :
ADMINISTRATIVE TRIALS & HEARINGS, JONI :
KLETTER, as Commissioner and Chief     :
Administrative Law Judge of the Office :
of Administrative Trials and Hearings, :
INSPECTOR DAVI, and INSPECTOR JOHN     :
DOE(S) AND INSPECTOR JANE DOE(S), to   :
be identified later,                   :
                                       :
                         Defendants.   :
                                       :
-------------------------------------- X
```

APPEARANCES:

For plaintiff Union Square Supply, Inc.:
Robert J. La Reddola
La Reddola Lester & Associates, LLP
600 Old Country Road, Suite 230
Garden City, NY 11530

For defendants:
Darren Trotter
Office of the Corporation Counsel of the City of New York
100 Church Street
New York, NY 10007

DENISE COTE, District Judge:

Plaintiff Union Square Supply, Inc. ("Union Square Supply") has brought this putative class action alleging that New York City's rule against price gouging was adopted and enforced in ways that violate its federal and state constitutional rights. The defendants, the City of New York and several of its agencies and officials (collectively, "New York City" or "the City"), have moved to dismiss.  For the following reasons, the motion to dismiss is granted.

## Background

The following facts are derived from the complaint and other documents properly considered on a motion to dismiss.

I.  New York City's Consumer Protection Law and Price Gouging Rule

New York City has adopted a consumer protection law that prohibits, among other things, "unconscionable trade practice[s]."  N.Y.C. Admin. Code § 20-700.  "Unconscionable trade practices" are defined as, inter alia, "[a]ny act or practice in connection with the sale [or] . . . offering for sale . . . of any consumer goods . . . which . . . results in a gross disparity between the value received by a consumer and the price paid, to the consumer's detriment."  N.Y.C. Admin. Code § 20-701(b).  Violations are punishable by a civil penalty of up

2

to $350 per violation, or a civil penalty of up to $500 per knowing violation.  N.Y.C. Admin. Code § 20-703.  The Commissioner of the City's Department of Consumer and Worker Protection ("DCWP") is authorized to promulgate rules and regulations that further define unconscionable trade practices and take enforcement action against violators, so long as the regulations comport with the statutory definition of an unconscionable trade practice.  N.Y.C. Admin. Code § 20-702.

In response to the outbreak of the COVID-19 pandemic, the DCWP adopted on March 18, 2020 an emergency rule prohibiting price gouging (the "Price Gouging Rule" or the "Rule").  New York City, N.Y., Rules, Tit. 6, § 5-42.  The DCWP adopted the Price Gouging Rule as a permanent rule on June 26, 2020, to be applicable during any declared state of emergency in the City.

The Price Gouging Rule prohibits, as an unconscionable trade practice, merchants from "sell[ing] or offer[ing] for sale covered goods or services at an excessive price during a declared state of emergency in the City of New York."  Id. at § 5-42(b)(1).  "Excessive price" is defined as "10 percent or more above the price at which the same or similar good or service could have been obtained by a buyer in the City of New York 30-60 days prior to the declaration of a state of emergency", and "covered goods or services" are defined as "goods or services

3

that are essential to health, safety, or welfare", including "staple consumer food items," products "used for emergency cleanup," "emergency supplies . . . , medical supplies such as medications [or] medical masks," or motor fuels.  Id. at § 5-42(a).  Each sale or offer for sale constitutes a separate violation.  Id. at § 5-42(b)(3).

There are two exceptions provided in the Price Gouging Rule.  A merchant may increase its price for a covered good or service to an excessive one if its supplier has increased its price, "provided that the increase charged to the buyer is comparable to the increase incurred by the merchant."  Id. at § 5-42(b)(2)(i).  Alternatively, a merchant may offer a covered good or service for sale at an excessive price during an emergency if the merchant sold the covered good or service at an excessive price prior to the emergency and does not increase its price during the emergency.  Id. at § 5-42(b)(2)(ii).

Employees of the DCWP inspect New York merchants to confirm compliance with the Rule.  If a DCWP inspector determines that a merchant has violated the Rule, she may issue a summons for an administrative hearing before a hearing officer of the City Office of Administrative Trials and Hearings ("OATH").  Hearing officers receive evidence regarding the alleged violation before issuing written decisions.

4

If a merchant is found to have violated the Rule, the hearing officer may impose a civil penalty of up to $350 per violation (or $500 per knowing violation) in accordance with N.Y.C. Admin. Code § 20-703.  Penalties imposed may be appealed to the OATH Appeal Tribunal.  Upon exhaustion of administrative remedies, a merchant may then, pursuant to Article 78 of the New York Civil Practice Law and Rules, challenge in New York state court a penalty imposed for a Rule violation.  See Campo v. New York City Employees' Retirement System, 843 F.2d 96, 101 (2d Cir. 1988) ("Article 78 provides the mechanism for challenging a specific decision of a [New York] administrative agency." (citation omitted)).

II.  The Plaintiff and the City's Enforcement Action

Union Square Supply operates a store in Manhattan.  On July 13, 2020, Union Square Supply received a summons from DCWP alleging that it had violated the Price Gouging Rule.  The summons charged Union Square Supply with 88 violations of the rule for selling face masks, hand sanitizer, rubber gloves, and other cleaning supplies at an excessive price as defined by the Rule.  At some point prior to that date, an inspector employed by DCWP had conducted an inspection at Union Square Supply. During that inspection, the DCWP inspector did not inquire as to

the price at which Union Square Supply had purchased the goods
it offered for sale at an ostensibly excessive price.

After Union Square Supply was held in default, which was
subsequently vacated, it participated in a hearing before an
OATH hearing officer on January 12, 2021.  At the hearing, Union
Square Supply submitted evidence that the price of the covered
goods had increased due to price increases by its suppliers, and
DCWP submitted evidence showing that Union Square Supply charged
excessive prices in violation of the Rule.  The OATH hearing
officer adjourned the hearing to allow Union Square Supply to
review DCWP's evidence, and the hearing concluded on February
17.

On February 25, an OATH hearing officer issued a decision
finding that Union Square Supply had violated the Rule and
imposed a $21,000 penalty.  The hearing officer concluded that
DCWP had proven 60 violations and that the other alleged
violations were either withdrawn or not proven.  Thus, the
hearing officer imposed a penalty of $350 for each violation.

Union Square Supply timely appealed the OATH hearing
officer's decision on March 31, 2021.  The OATH Appeal Tribunal
largely rejected Union Square Supply's appeal.  Union Square
Supply did not challenge the administrative decision via an
Article 78 proceeding.

III. Procedural History

Union Square Supply commenced this action on March 18, 2021, alleging that the Price Gouging Rule and the City's enforcement of it violated its constitutional rights and those of a class of similarly situated merchants.  The complaint seeks both money damages and injunctive relief.  In conjunction with its complaint, Union Square Supply moved for a temporary restraining order preventing the City from exacting the fine imposed against Union Square Supply for its alleged violation of the Price Gouging Rule or taking any further steps to enforce the Price Gouging Rule, contending that any further enforcement action would violate its due process rights.

At a conference held on March 23, Union Square Supply's request for a temporary restraining order was denied on the record.  The Court concluded that Union Square Supply had not shown it was likely to succeed on the merits or experience irreparable harm, as required to secure a temporary restraining order, and that it had not shown a temporary restraining order would be in the public interest.  See Agudath Israel of America v. Cuomo, 983 F.3d 620, 631 (2d Cir. 2020) (standard for a temporary restraining order when it will affect government action).

7

Because Union Square Supply could take an administrative appeal of the OATH decision imposing a fine and, if unsuccessful, challenge the imposition of the fine in state court via an Article 78 proceeding, the Court also held that Union Square Supply was unlikely to succeed on the merits of its due process claim.  See Progressive Credit Union v. City of New York, 889 F.3d 40, 54 (2d Cir. 2018).  And because Union Square Supply's only obligation under the allegedly unconstitutional Price Gouging Rule was to pay a fine, it had not shown irreparable harm.  See New York v. United States Department of Homeland Security, 969 F.3d 42, 86 (2d Cir. 2020).  Finally, the public interest in preventing price gouging during a pandemic weighed against granting the requested relief.

After the temporary restraining order was denied, the City moved to dismiss on June 1.  Union Square Supply then served an amended complaint on June 22.  The City moved again to dismiss on July 13, and the plaintiff opposed on August 3.  The motion to dismiss became fully submitted on August 17.

## **Discussion**

In resolving a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "the court's task is to assess the legal feasibility of the complaint."  Lynch v. City of New York, 952 F.3d 67, 75 (2d Cir. 2020).  In other words, a court must

determine "whether the complaint's allegations, taken as true and afforded all reasonable inferences, state a plausible claim for relief." Henry v. Cty. of Nassau, 6 F.4th 324, 331 (2d Cir. 2021).  To survive a defendant's motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  The complaint must offer more than "naked assertions devoid of further factual enhancement," and a court is not "bound to accept as true a legal conclusion couched as a factual allegation." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

I.   Void for Vagueness

Union Square Supply alleges that the Price Gouging Rule is unconstitutionally vague.  For the following reasons, Union Square Supply fails to state a void for vagueness claim.

A.   Legal Framework

The void-for-vagueness doctrine, "one of the most fundamental protections of the Due Process Clause," requires "that laws be crafted with sufficient clarity to give the person

of ordinary intelligence a reasonable opportunity to know what
is prohibited and to provide explicit standards for those who
apply them." VIP of Berlin, LLC v. Town of Berlin, 593 F.3d
179, 186 (2d Cir. 2010) (citation omitted). Thus, in order to
avoid invalidation under the void-for-vagueness doctrine, laws
and regulations must "be sufficiently clear to give a person of
ordinary intelligence a reasonable opportunity to know what is
prohibited" and may not "allow for arbitrary and discriminatory
enforcement." New York v. Griepp, 991 F.3d 81, 128, vacated on
reh'g sub nom. New York by James v. Griepp, 11 F.4th 174 (2d
Cir. 2021).

A law or regulation may be challenged as void-for-vagueness
either on its face or as applied. When a statute does not
implicate First Amendment rights, courts generally evaluate a
vagueness challenge "in light of the specific facts of the case
at hand and not with regard to the facial validity of the . . .
statute or regulation at issue." United States v. Holcombe, 883
F.3d 12, 17 (2d Cir. 2018) (citation omitted). Courts "examine
as-applied vagueness claims in two steps:" first, by
"determin[ing] whether the statute gives the person of ordinary
intelligence a reasonable opportunity to know what is
prohibited" and then by "consider[ing] whether the law provides

explicit standards for those who apply it." Williams v.
Korines, 966 F.3d 133, 140 (2d Cir. 2020) (citation omitted).

"Condemned to the use of words, we can never expect
mathematical certainty from our language." Grayned v. City of
Rockford, 408 U.S. 104, 110 (1972).  Thus, "a statute or
regulation is not required to specify every prohibited act" in
order to pass muster under the first prong of the void-for-
vagueness analysis. Williams, 966 F.3d at 140 (citation
omitted).  With respect to the second prong of the vagueness
analysis, a statute or regulation provides adequate guidance for
enforcement if it either provides "as a general matter . . .
sufficiently clear standards to eliminate the risk of arbitrary
enforcement" or "even in the absence of such standards, the
conduct at issue falls within the core of the statute's
prohibition, so that the enforcement before the court was not
the result of the unfettered latitude" that an enforcer "might
have in other, hypothetical applications of the statute." VIP
of Berlin, 593 F.3d at 191 (citation omitted).  Finally, "[t]he
degree of vagueness tolerated in a statute varies with its type:
economic regulations are subject to a relaxed vagueness test,
laws with criminal penalties to a stricter one, and laws that
might infringe constitutional rights to the strictest of all."
Id. at 186.

B.   Analysis

Union Square Supply's vagueness challenge faces strong
headwinds.  Because the Price Gouging Rule does not implicate
Union Square Supply's First Amendment rights, it may only
challenge the application of the Price Gouging Rule to its
specific conduct.  And because the Price Gouging Rule is an
economic regulation that carries only civil penalties, it is
"subject to a relaxed vagueness test" relative to a criminal
law.  Id.

Union Square Supply has failed to state a void-for-
vagueness claim as to the application of the Price Gouging Rule
to its specific conduct.  As an initial matter, the Rule's text
gives a merchant of ordinary intelligence a reasonable
opportunity to know what the Rule prohibits.  The Rule sets
forth a comprehensive list of categories of covered goods that
includes exemplar items, as well as a numerical benchmark for
prohibited price increases (10 percent or more) and a temporal
benchmark for when the Rule applies (after the declaration of a
state of emergency under City law).  Cf. People v. Two Wheel
Corp., 512 N.Y.S.2d 439, 441 (2d Dep't. 1987) (upholding against
a vagueness challenge a New York state price-gouging prohibition
that prohibited only "unconscionably excessive" price increases
without a numerical benchmark).  This plain-language rule

12

provides sufficient guidance to regulated parties, particularly given the relaxed vagueness test applicable in the context of this civil enforcement regime.  And for the same reasons, the language of the Rule provides sufficient guidance to prospective enforcers.

Moreover, even if the Rule suffers from some ambiguity, Union Square Supply's conduct -- charging steep prices for products such as face masks and hand sanitizer during the early months of the COVID-19 pandemic -- falls in the heartland of what the Rule was intended to prohibit.  "In an as-applied challenge, one whose conduct is clearly proscribed by [a regulation] cannot successfully challenge it for vagueness," even if there is some "ambiguity at [its] outer reaches." United States v. Nadirashvili, 655 F.3d 114, 122 (2d Cir. 2011) (citation omitted).

Union Square Supply's arguments to the contrary are unavailing.  In contending that the Rule is void for vagueness, Union Square Supply focuses not on the Rule's text, but rather on perceived deficiencies in the ways that City employees enforce the Rule.  It argues, for instance, that in determining benchmarks for whether a price increase is excessive, City inspectors and hearing officers rely on "price packets" that purport to cite prices for comparable goods but are in fact

invalid because the supposed benchmark prices in the "price packets" are sampled from merchants outside of New York City or reflect prices that prevailed prior to the COVID-19 pandemic. This is not an argument that the Rule is unconstitutionally vague.  It is instead an argument that the City is not following the Rule's plain text, which defines "excessive price" by reference to prevailing prices in New York City within a given time frame rather than prices that may prevail in other places outside of the relevant time frame.  To the extent that Union Square Supply wishes to object to OATH's decision on the grounds that City inspectors and OATH hearing officers are disregarding the Rule's requirements, the correct procedural mechanism to do so was an Article 78 proceeding in state court.

Union Square Supply also challenges the exception to the Rule which allows a merchant to sell a product at an excessive price if the price increase is a "direct result of costs imposed on [the] merchant by the supplier of such goods or services" so long as "the increase charged to the buyer is comparable to the increase incurred by the merchant."  N.Y. Rules, Tit. 6, § 5-42(b)(2)(i).  Union Square Supply claims that the exception is void for vagueness because the City, in OATH decisions, has made clear that this provision allows merchants only to increase prices in a manner that accounts for raw price increases by

suppliers, while merchants have interpreted the provision to allow them to increase their prices to maintain consistent profit margins as their suppliers increase prices, even if that would require increasing retail prices by an amount greater than the amount of increase in the wholesale price.

This claim that the Rule is void for vagueness because of a vague exception also fails.  The Rule's plain text makes clear that the exception may only be invoked to account for any increase in raw wholesale prices and does not allow merchants to further increase prices to maintain a consistent profit margin. While Union Square Supply may disagree with the City's choice to adopt a Rule that does not allow merchants to maintain consistent profit margins during emergencies, that disagreement does not render the Rule void for vagueness.[1]

## II.  Procedural Due Process

To the extent that Union Square Supply pleads a claim that the enforcement of the Price Gouging Rule violates its

---

[1] In its submission in opposition to the City's motion to dismiss, Union Square Supply argues for the first time that N.Y. Rules, Tit. 6, § 5-42(b)(2)(ii) is void for vagueness, as well. Because this claim is raised for the first time in opposition to the City's motion to dismiss, the Court disregards it.  Soules v. Connecticut, Dep't of Emergency Servs. & Pub. Prot., 882 F.3d 52, 56 (2d Cir. 2018) ("Ordinarily, parties may not amend the pleadings through motion papers.").

procedural due process rights,[2] its claim fails.  "In a § 1983 suit brought to enforce procedural due process rights, a court must determine (1) whether a property interest is implicated, and, if it is, (2) what process is due before the plaintiff may be deprived of that interest."  Progressive Credit Union, 889 F.3d at 51 (citation omitted).  The parties do not dispute that, because the Price Gouging Rule carries a monetary fine, the Rule implicates a property interest.  The only relevant question for analyzing Union Square Supply's procedural due process claim, then, is whether the City provides adequate process prior to exacting a fine for entities accused of violating the Rule.  For the following reasons, the due process protections provided for entities facing sanctions under the Rule pass constitutional muster.

---

[2] It is unclear from the First Amended Complaint whether Union Square Supply is asserting a procedural due process claim.  The first cause of action in Union Square Supply's First Amended Complaint alleges a violation of "Plaintiff's 14th Amendment Due Process Rights."  But the allegations in the first cause of action, while asserting certain procedural due process deficiencies, focus primarily on the Rule's purported vagueness, and the void-for-vagueness doctrine is of course derived from the Due Process Clause.  See VIP of Berlin, 593 F.3d at 186. The City's motion to dismiss and Union Square Supply's opposition to the motion to dismiss both assume that the complaint asserts a procedural due process claim, and for the avoidance of any doubt, this Opinion analyzes whether Union Square Supply has stated a procedural due process claim.

Before depriving an entity of a constitutionally protected
interest in property, "it is settled that prior to such a
deprivation, the state must use procedures that appropriately
balance the interests involved in the deprivation." Id. at 52.
In order to determine whether a given set of procedures
appropriately balances the interests involved and thereby
satisfies the Due Process Clause, courts use the familiar
framework set forth by the Supreme Court in Mathews v. Eldridge,
424 U.S. 319 (1976).  The Mathews framework requires a court to
assess

> [f]irst, the private interest that will be affected by
> the official action; second, the risk of an erroneous
> deprivation of such interest through the procedures
> used, and the probable value, if any, of additional or
> substitute procedural safeguards; and finally, the
> Government's interest, including the function involved
> and the fiscal and administrative burdens that the
> additional or substitute procedural requirement would
> entail.

Id. at 335.

An application of the Mathews factors leads to a conclusion
that the enforcement mechanism provided by the Rule satisfies
due process.  Assuming without deciding that Union Square Supply
has identified a significant private interest affected by the
City's efforts to exact fines under the Rule, the two other
Mathews factors weigh strongly in favor of the City.  Before a
penalty is imposed under the Rule, regulated entities are

17

entitled to a pre-deprivation hearing before an OATH hearing officer, and penalties imposed under the Rule may be challenged in New York state court in a post-deprivation hearing pursuant to Article 78.  The Second Circuit has held that analogous administrative schemes satisfy due process.  See, e.g., Rosu v. City of New York, 742 F.3d 523, 526-28 (2d Cir. 2014) (New York City Commission on Human Rights investigative procedure).  This is particularly so given the availability of Article 78 review. New York State Nat. Organization for Women v. Pataki, 261 F.3d 156, 168-69 (2d Cir. 2001) ("Given the availability of Article 78 procedures . . . we find that the second Mathews factor weighs dispositively in favor of the government.").  In light of the Government's significant interest in deterring price gouging during an emergency, the City's mechanism of enforcing the Rule satisfies due process.

III. Excessive Fines

Union Square Supply claims that a maximum fine of $350 per unit of each good sold at a price that violates the Price Gouging Rule is unconstitutionally excessive under the Eighth Amendment's Excessive Fines Clause.  For the following reasons, the plaintiff's Eighth Amendment claim is unavailing.

A.   Legal Framework

The Excessive Fines Clause of the Eighth Amendment prohibits the "imposition" of "excessive fines."  Penalties imposed for violations of the Price Gouging Rule are civil penalties, rather than criminal fines.  But since the Eighth Amendment "limits the government's power to extract payments . . . as punishment for some offense," regardless of whether the payment is exacted as a result of a criminal conviction or some other process, penalties imposed by the City for violations of the Rule are subject to the strictures of the Eighth Amendment. Timbs v. Indiana, 139 S. Ct. 682, 687 (2019) (applying the Excessive Fines Clause to a civil forfeiture proceeding); see also United States Sec. & Exch. Comm'n v. Alpine Sec. Corp., 413 F. Supp. 3d 235, 250 (S.D.N.Y. 2019) (conducting Eighth Amendment excessive fines analysis before imposing civil penalty).

"A civil penalty violates the Excessive Fines Clause if it is 'grossly disproportional to the gravity of the defendant's offense.'"  New York v. United Parcel Serv., Inc., 942 F.3d 554, 599 n.36 (2d Cir. 2019) (quoting United States v. Bajakajian, 524 U.S. 321, 337 (1998)).  In determining whether a civil penalty is grossly disproportionate, courts look to factors such as

> (1) the essence of [the violation for which the civil
> penalty is imposed] and its relation to other
> [violations], (2) whether the [violator] fits into the
> class of persons for whom the statute was principally
> designed, (3) the maximum [penalty] that could have
> been imposed, and (4) the nature of the harm caused by
> the [violator's] conduct.

United States v. Viloski, 814 F.3d 104, 110 (2d Cir. 2016).  In

addition to these factors, courts may also consider "whether the

forfeiture would deprive the defendant of his livelihood, i.e.,

his future ability to earn a living," id. at 111 (citation

omitted), but should "not consider as a discrete factor a

[violator's] personal circumstances, such as age, health, or

present financial condition" in conducting the analysis.  Id. at

112.  "The burden rests on the defendant to show the

unconstitutionality of the [penalty]."  Id. at 109 (citation

omitted).

B.  Analysis

An application of these principles demonstrates that Union

Square Supply has failed to state a claim for a violation of the

Excessive Fines Clause.  An OATH hearing officer found that

Union Square Supply had committed 60 violations of the Rule by

increasing prices on products such as hand sanitizer, face

masks, and disinfectant cleansers.  The hearing officer imposed

a penalty of $21,000, or a fine of $350 per violation.  Under

these circumstances, a civil penalty of $350 per violation is

not grossly disproportionate.  Union Square Supply's conduct
fell squarely into the heartland of what the Rule was enacted to
prevent -- price gouging with respect to products necessary to
protect health during the COVID-19 pandemic.  And in limiting
access to essential goods during the COVID-19 pandemic, Union
Square Supply's conduct had the potential to cause significant
harm to public health.  While the hearing officer imposed the
maximum authorized penalty per violation, a significant penalty
was warranted given the breadth of Union Square Supply's
violations and the need for general and specific deterrence.
Finally, Union Square Supply has not alleged any facts
suggesting that the $21,000 penalty will deprive it of its
ability to continue to operate.

Union Square Supply's arguments to the contrary are
unconvincing.  In support of its Eighth Amendment argument,
Union Square Supply primarily points out how, given that the
Rule allows for a penalty of $350 per unit of product sold at an
excessive price, cumulative penalties could quickly become
unconstitutionally high if a merchant stocks many units of a
product.  But since Union Square Supply has failed to allege
specific "examples of instances of the imposition of
impermissibly cumulative penalties," its "bare allegations are
inadequate to state a plausible claim that the" penalties

imposed under the Rule "are disproportionate to the gravity of the offenses they are designed to punish, much less 'grossly' disproportionate." New York State Pro. Process Servers Ass'n, Inc. v. City of New York, No. 14cv1266(DLC), 2014 WL 4160127, at *12 (S.D.N.Y. Aug. 18, 2014).

IV.  State Law

Finally, Union Square Supply alleges that New York City has adopted regulations for the enforcement of the Price Gouging Rule and enforces the Rule in a manner that violates the separation of powers and nondelegation principles of the New York Constitution, as interpreted by the New York Court of Appeals. See Matter of LeadingAge N.Y., Inc v. Shah, 32 N.Y.3d 249, 260 (2018) ("If an agency promulgates a rule beyond the power it was granted by the legislature, it usurps the legislative role and violates the doctrine of separation of powers.").  This state-law claim invokes the Court's supplemental jurisdiction.  28 U.S.C. § 1367(a).  Because this state constitutional claim "raises a novel or complex issue of [New York] law" and the Court "has dismissed all claims over which it has original jurisdiction," the Court declines to exercise supplemental jurisdiction over this claim and dismisses it without prejudice to renewal in state court.  28 U.S.C. § 1367(c); see also Delaney v. Bank of America Corp., 766 F.3d

163, 170 (2d Cir. 2014) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." (citation omitted)).

## Conclusion

The City's motion to dismiss is granted.  Because Union Square Supply has had an opportunity to amend its complaint in response to the City's motion to dismiss, has failed to address the complaint's deficiencies, and has not requested further leave to amend, the dismissal of Union Square Supply's federal claims is with prejudice.  See TechnoMarine SA v. Giftports, Inc., 758 F.3d 493, 505-06 (2d Cir. 2014).  The state law claims are dismissed without prejudice to renewal in state court.  The Clerk of Court shall enter judgment for the defendants and close this case.

Dated:    New York, New York
          November 16, 2021

_____
          DENISE COTE
United States District Judge

23